Filed 8/30/19; Certified for Publication 9/16/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GARY PHILLIPS KLUGMAN,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>MONTEREY COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | H045415<br>(Monterey County<br>Super. Ct. No. SS160207A) |

In this pretrial petition for writ of mandate, prohibition, or other relief, Gary Phillips Klugman seeks review of an order denying his motion to quash a warrant to search his home and office computers and to suppress the electronic evidence of child pornography found in those devices during the ensuing warrant search. He challenged the warrant under both Penal Code section 1538.5[1] and the Electronic Communications Privacy Act (ECPA), section 1546, et seq., which restricts government access to "electronic device information." (§ 1546.1, subd. (a)(3).) We will deny the petition for writ relief on both procedural and substantive grounds.

---

[1] All further statutory references are to the Penal Code.

*Background*

On January 15, 2016, a warrant issued for the search of Klugman's residence and the office of his dental practice. The warrant authorized law enforcement officers to seize evidence of "sexual exploitation of a child, in violation of Penal Code section 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Penal Code [section] 311.11." Among the property seized pursuant to the warrant four days later was extensive electronic evidence contained on computers, memory sticks, external hard drives, thumb drives, memory cards, cameras, cell phones, and other devices.

Klugman was charged with two counts of knowingly possessing images of minors engaging in or simulating sexual conduct, in violation of section 311.11, subdivision (a). At the arraignment on May 18, 2017, defense counsel advised the court that she wished to "give notice of a motion to suppress and set the appropriate dates and set a filing schedule." The court set the matter for hearing on June 29, with "[d]efense papers" to be filed by June 2, and the People's response by June 26. A "pretrial hearing" was also scheduled for June 27 to "discuss [the matter] a little bit further."

On May 24, 2017, defense counsel Juliet Peck received an email from the prosecutor informing her that the assigned dates for the motion were "all while I am on vacation." Peck contacted the court, which authorized a conference in chambers on May 30 to discuss future court dates. During the conference the prosecutor requested a continuance of the hearing date as well as additional time for briefing. The court set a new hearing date of September 7; the defense points and authorities was due July 26 and the prosecutor's response was due August 21.

The defense motion to quash the search warrant and suppress the seized evidence was filed July 25, 2017. The prosecutor missed the response deadline and was granted a continuance to September 8, 2017. Still unable to comply with the filing date, the prosecutor was given another continuance to file responsive points and authorities, to

September 26. The hearing was continued to October 20. One more continuance of the hearing was ordered thereafter, to November 29, 2017.

Klugman based his motion on both section 1538.5 and section 1546.4, subdivision (a), part of the ECPA. In his challenge under section 1538.5, Klugman asserted that the warrant lacked both particularity and probable cause, thereby violating the Fourth Amendment to the United States Constitution and article I, section 13, of the California Constitution. As to the ECPA, Klugman argued that the warrant violated section 1546.1 "because it contained no limiting time periods, specific accounts, precise descriptions of the types of information, or particular electronic devices that could be seized. Nor did it contain any safeguards such as sealing or the appointment of a referee to preserve the privacy of seized information unrelated to the purpose of the warrant. Instead, it authorized a 'complete dump' of all electronic devices found at the defendant's home and business including thousands of patient records."

On December 12, 2017, the trial court denied the motion to suppress on both grounds. The court determined that there was probable cause to believe that child pornography would be found at Klugman's home and office, based on reliable information obtained from witnesses, information that was not stale and that revealed a "continuing pattern over a period of years that cannot be ignored." Further, the court found, the warrant did "describe with particularity" the items to be seized. The court then addressed the ECPA, finding that the warrant complied with section 1546.1, subdivisions (c) and (d). The warrant did "describe with particularity the information to be seized," within the meaning of subdivision (d)(1). In addition, although the warrant lacked the requirement prescribed in subdivision (d)(2) that information unrelated to the objective of the warrant be sealed, that deficiency did not require quashing of the warrant or suppression of the evidence. There was nothing to indicate that the officers had not followed the sealing procedure, and the defense had not requested that irrelevant information be sealed or destroyed.

In his petition to this court, filed in January 2018, Klugman renews his contention that the warrant was invalid on both grounds.

In July 2018, Klugman filed an amendment to his petition, addressing an inquiry from this court regarding the date he was arraigned.  We thereafter denied Klugman's petition, citing section 1510.  On October 17, 2018, however, the Supreme Court granted Klugman's petition for review and directed us to vacate our order and to issue an order to show cause why the exceptions to the timeliness requirement of section 1510 should not apply in this case.  We did so, and the People, as real party in interest, filed a return, to which Klugman responded by "Reply to Return to Order to Show Cause."  Both parties addressed the question of whether the petition withstood the timeliness restrictions of section 1510.  We also received argument from the Electronic Frontier Foundation and the American Civil Liberties Union Foundation of Northern California addressing the issue of whether section 1510 applies to the ECPA.

On January 9, 2019, we granted Klugman's request to allow him to go beyond the section 1510 issues and address the merits of the asserted sections 1538.5 and 1546.1 violations. We have accordingly received supplemental briefs on the substantive issues from both parties and issued another order to show cause.  We have concluded that the deadline prescribed in section 1510 applied to both grounds of Klugman's motion to quash the warrant and suppress evidence, and that the untimeliness was not excused by the procedural circumstances presented.  We further find no prejudice in his attorney's noncompliance with that provision, as the trial court in any event did not err in denying the motion.

*Discussion*

1.  *Application of Section 1510 to the Section 1538.5 Motion*

Section 1510 provides that after a motion "made pursuant to Section 995 or 1538.5" is denied, it "may be reviewed prior to trial only if the motion was made by the defendant in the trial court not later than . . . 60 days following defendant's arraignment

on the information or indictment if a felony, unless within these time limits the defendant was unaware of the issue or had no opportunity to raise the issue." The petitioner "bears the burden of showing that he is within one exception or the other." (*Ghent v. Superior Court* (1979) 90 Cal.App.3d 944, 950-951 (*Ghent*).)

In their return the People contend that Klugman is foreclosed from obtaining appellate review of the denial of his suppression motion because the motion was made on July 25, 2017, more than 60 days from the May 18 arraignment.[2] Klugman responds that (1) his counsel did provide notice of the motion in court, by orally announcing her intent to file it; (2) the motion was late by only eight or nine days, a de minimis number, which was excused by his having no opportunity to raise the complex and novel issues in the motion; and (3) if the exceptions to the time limit are deemed inapplicable, then he received ineffective assistance of counsel in failing to file the motion within the 60-day limit.

Klugman's oral "notice" and request for a briefing schedule[3] was not equivalent to the motion itself. "A motion is an application to the court for an order. [Citation.] The applicant must, in some way, communicate to the court what order is desired and upon what grounds. [Citations.]" (*Smith v. Superior Court* (1978) 76 Cal.App.3d 731, 734.) Counsel's statement at arraignment "did not tell the court . . . what [Klugman] would want suppressed, or the grounds of suppression." (*Ibid.*) He therefore did not preserve his ability to seek pretrial review of the order by making the motion within 60 days of arraignment. (*Id.* at pp. 734-735; see also *Anderson v. Superior Court* (1988) 206 Cal.App.3d 533, 542 ["defendant need not follow strict procedures to bring a motion to

---

[2] The People's request for judicial notice of a letter to the governor by the sponsor of Senate Bill No. 677, the bill that became section 1510, is granted.

[3] Defense counsel announced her intent by saying, "What we wanted to do today is give notice of a motion to suppress and set the appropriate dates and set a filing schedule." The court then set the deadlines for "[d]efense papers" and the People's response.

suppress, but must make the basis for the motion clear, and must seek and obtain an unambiguous ruling on the motion"].)

The statutory exceptions based on lack of awareness and opportunity are inapplicable in these circumstances. Klugman could have filed the motion within the time limits and subsequently developed his arguments in his points and authorities within the extended time limits afforded by the trial court, which had been accommodating toward both parties when informed of unavoidable delays. The cases cited by Klugman are distinguishable. In *Arteaga v. Superior Court* (2015) 233 Cal.App.4th 851, 861, for example, the defendant's attorney was appointed one week after arraignment, discovery was not provided until two weeks after that, and defense counsel had to review 13 volumes of grand jury transcripts in addition to thousands of pages of discovery documents, plus "numerous audio recordings and images." (See *Ghent*, *supra*, 90 Cal.App.3d at p. 952 [motion five days late subject to " 'no opportunity' " exception, given delay in receiving preliminary hearing transcript]; see also *McGill v. Superior Court* (2011) 195 Cal.App.4th 1454, 1514 [section 1510 exceptions applicable to section 995 motion where solo practitioner had to conduct line-by-line review of grand jury testimony and extensive legal research]; *Fleming v. Superior Court* (2010) 191 Cal.App.4th 73, 104-105 (*Fleming*) [unawareness and no-opportunity exceptions applied, where counsel would not have been able to review five-volume transcript and prepare dismissal motion within 60 days].)

The combination of voluminous transcripts and delays in receiving them is not presented here. Thus, the defense was not encumbered by unawareness of the potential grounds for a suppression motion or by lack of opportunity to file the motion. Instead, counsel was aware of facts that convinced her that grounds existed for a motion to quash the warrant and suppress the evidence seized in the search. That the prosecutor was unable to meet the deadlines for the People's response did not constitute lack of opportunity to file the motion itself within the 60 days permitted under section 1510.

2. *Application of Section 1510 to Section 1546.4*

As noted, Klugman's motion was based on both section 1538.5 and section 1546.4, subdivision (a). He contends that the 60-day time limit of section 1510 does not apply to motions brought under the latter provision. We disagree. The ECPA sets restrictions on government access to electronic communication and device information, including requirements applicable to the content and use of search warrants for electronic information. (§ 1546.1, subd. (d).) It prohibits a government entity from accessing such information through physical interaction or electronic communication with an electronic device unless one of several statutory exceptions applies, including the procuring of a warrant or the consent of the possessor of the device. (§ 1546.1, subd. (a)(3), (c); Stats. 2015, ch. 651, § 1.)

The ECPA makes it clear, however, that a suppression motion challenging the search of an electronic device "shall be made, determined, *and be subject to review* in accordance with the procedures set forth in subdivisions (b) to (q), inclusive, of Section 1538.5." (§ 1546.4, subd.(a), italics added.) Thus, while a search warrant procured for electronic devices and information is circumscribed by the permitted uses and restrictions set forth in the ECPA, the mechanism for challenging violations is expressly made the same as the procedures delineated in section 1538.5. Subdivision (i) of section 1538.5 provides for a special hearing (such as the one held in this case) at which a defendant can contest the validity of a search. The provision also enables a defendant to contest an adverse ruling through appellate review, which "shall be by means of an extraordinary writ of mandate or prohibition filed within 30 days after the denial of his or her motion at the special hearing."[4] Section 1510 then allows for pretrial writ review of motions made and denied pursuant to the procedures outlined in section 1538.5, which 1546.4 incorporates. Klugman was bound by the directive in

---

[4] There is no dispute that Klugman filed his petition in this court within 30 days of the denial of his motion.

7

section 1546.4, subdivision (a), to follow section 1538.5 not only in moving for suppression of evidence but also in seeking review of rulings denying such motions.

3. *Ineffective Assistance of Counsel*

Although Klugman asserts that he "has been diligent in pursuing his motion to test the legality of the search warrant," he also claims ineffective assistance of counsel for missing the section 1510 deadline. Klugman emphasizes that he is now "faced with the formidable challenge of [a] lengthy and complex jury trial on evidence that never should be used to support a prosecution, possibly being convicted and waiting in prison pending the years-long appellate process of a postconviction appeal seeking reversal based on these same search and seizure challenges, along with the stigma of registration (and the collateral consequences of loss of his license and profession as a dental surgeon)."

Assuming, contrary to the People's argument, that there is a right to counsel for purposes of a pretrial suppression motion and interlocutory review, and assuming trial counsel was constitutionally ineffective for failing to meet the 60-day deadline, we nonetheless find no prejudice. In our view, the measure of prejudice resulting from counsel's failure to file a timely motion is whether we would have granted Klugman's petition but for counsel's error. Having received extensive briefing from each party addressing the merits of the petition, we answer this question in the negative.

4. *The Warrant*

The search warrant, issued on January 15, 2016—just two weeks after the ECPA took effect— authorized the seizure of (1) "evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony" and (2) "evidence that tends to show that sexual exploitation of a child, in violation of Penal Code § 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Penal Code § 311.11 has occurred or is occurring." The warrant permitted the search of Klugman's business office, Blanco Circle Dental Care, as well as his residence, structures and storage spaces on that property, and his car while

parked at his home or office. The property to be seized encompassed "[a]ny material depicting or relating to child pornography," including computer files portraying "minors . . . posing in the nude or posing in sexually explicit acts and/or positions or engaging in sexual activity while alone or with other minors or adults." Permitted sources of such material included "[a]ny computer equipment," photographic equipment, and any form of correspondence, such as e-mail and chat room conversations, that would identify victims of sexual abuse or exploitation.

5. *The Motion to Suppress*

Klugman's suppression motion rested on both statutory and constitutional grounds. He contended that the ECPA "was violated because the warrant gave law enforcement officers unrestrained authority to seize and search *all* electronic devices, electronic device information, and written material found in Dr. Klugman's home and dental office. It lacked any safeguards to protect the confidentiality of HIPAA-protected patient data even though the affidavit made clear [that] the target of the warrant was the computer system of a dental surgeon." The Fourth Amendment of the United States Constitution and article I, section 13, of the California Constitution were additionally violated because (1) the warrant was "devoid of any meaningful restrictions" to control the scope of the searches, contrary to the " 'particularity rule' "; (2) the supporting affidavit lacked probable cause; (3) the affiant's opinions regarding the behavior of those who deal in child pornography and who molest children were immaterial because Klugman did not molest children; and (4) the tips from which the affidavit was derived were "either hearsay, conclusory, or stale."

   a. *Probable Cause*

In his motion below Klugman asserted that probable cause to issue the warrant was lacking because (1) the affiant lacked sufficient law enforcement experience, (2) he provided an irrelevant statement describing the traits and behavior of those who exchange child pornography "and who molest children"; and (3) the tips the affiant had received

9

from informants were merely "hearsay, stale, or conclusory."**5** The trial court rejected each of these points in a detailed analysis of the facts in light of the applicable law.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." As our Supreme Court recently observed, "The pertinent rules governing a Fourth Amendment challenge to the validity of a search warrant, and the search conducted pursuant to it, are well settled. 'The question facing a reviewing court asked to determine whether probable cause supported the issuance of the warrant is whether the magistrate had a substantial basis for concluding [that] a fair probability existed that a search would uncover wrongdoing.' [Citations.] 'The test for probable cause is not reducible to "precise definition or quantification." ' [Citation.] But we have stated that it is ' "less than a preponderance of the evidence or even a prima facie case." ' [Citation.]" (*People v. Westerfield* (2019) 6 Cal.5th 632, 659 (*Westerfield*); see also *United States v. Hill* (2006) 459 F.3d 966, 970 (*Hill*) ["Probable cause means only a 'fair probability,' not certainty, and requires consideration of the totality of the circumstances"].) "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." (*Illinois v. Gates* (1983) 462 U.S. 213, 238-239.)

---

**5** Klugman adds that "there was insufficient 'nexus' " to justify the computer search at his office. As this assertion is not separately developed, it will not be addressed apart from the analysis of the other issues directed at the showing of probable cause.

" 'The magistrate's determination of probable cause is entitled to deferential review.' [Citations.] . . . [T]he warrant 'can be upset only if the affidavit fails as a matter of law to set forth sufficient competent evidence' supporting the finding of probable cause." (*Westerfield*, *supra*, 6 Cal.5th at pp. 659-660.) "In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1119; *People v. Glaser* (1995) 11 Cal.4th 354, 362.)

In his petition Klugman contends that probable cause "consisted solely of information from Mark Hietpas, an employee of the company that supported and maintained Petitioner's computer systems at his residence and dental office." The company was owned and operated by Clifford and Christine Greenberg, who also were friends of Klugman and his family. Hietpas told the affiant, Detective Dan Robison, that he had seen files on both Klugman's home and office computers in 2013 and 2014. The files had titles indicating child pornography, such as "12-year-old anal" and others mentioning ages as low as nine.

Klugman characterizes Hietpas's information as "conclusory" and "stale," based on "general, non-specific" observations of file names that could have pertained to titles two years earlier, rather than at the time the search warrant would be issued. The trial court, however, did not rely exclusively on the investigating officer's interview with Hietpas. The court took into account reports from other individuals, finding them reliable even though they were hearsay. One of those, Ryan Shimizu, another employee of the Greenbergs and a friend of Klugman's for 10 years, had found files on Klugman's computer "right up until November 2015,"[6] the month before Robison was initially

---

[6] According to Robison's report, the friendship ended at that point "due to [Klugman's] activity."

11

contacted by the Greenbergs' attorney. Shimizu's observations were of files containing "images and videos of young girls performing sex acts with unknown adults." Shimizu opened those files, which depicted girls in third or fourth grade "and clearly prepubescent," performing sex acts with unknown adults. A close friend of Shimizu, Jordan Rand, bought a hard drive that Klugman had given Shimizu; the hard drive contained dozens of images and videos depicting children having sex with unknown adults. Finally, the Greenbergs' daughter, who worked at the company, had house-sat for the Klugmans a year earlier and opened a folder containing "what she believed to be dozens and dozens of files with titles indicating child pornographic material."

"The question of staleness concerns whether facts supporting the warrant application establish [that] it is substantially probable the evidence sought will *still* be at the location at the time of the search." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 370.) "No bright-line rule defines the point at which information is considered stale. [Citation.] Rather, 'the question of staleness depends on the facts of each case.' [Citation.] 'If circumstances would justify a person of ordinary prudence to conclude that an activity had continued to the present time, then the passage of time will not render the information stale.' " (*People v. Carrington* (2009) 47 Cal.4th 145, 163-164.) Thus, "[w]hen evaluating a claim of staleness, we do not measure the timeliness of information simply by counting the number of days that have elapsed. [Citation.] Instead, we must assess the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information." (*United States v. Morales-Aldahondo* (1st Cir. 2008) 524 F.3d 115, 119 (*Morales-Aldahondo*).)

Child pornography searches illustrate the importance of this principle. "When a defendant is suspected of possessing child pornography, the staleness determination is unique because it is well known that 'images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes.' [Citation.]" (*United States v. Irving* (2d Cir. 2006) 452 F.3d 110, 125.) As the First

12

Circuit observed in rejecting the staleness argument based on the lapse of more than three years between acquisition of the evidence and the warrant application, "customers of child pornography sites do not quickly dispose of their cache. This is not a new revelation. [Citations.]" (*Morales-Aldahondo*, *supra*, 524 F.3d at p. 119.) "The observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases. Since the materials are illegal to distribute and possess, initial collection is difficult. Having succeeded in obtaining images, collectors are unlikely to quickly destroy them. Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret them in secure places, like a private residence. This proposition is not novel in either state or federal court: pedophiles, preferential child molesters, and child pornography collectors maintain their materials for significant periods of time." (*United States v. Lamb* (N.D.N.Y. 1996) 945 F. Supp. 441, 460; see *United States v. Newsom* (7th Cir. 2005) 402 F.3d 780, 783 ["Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned"]; see also *United States v. Lacy* (9th Cir. 1997) 119 F.3d 742, 746 [finding information not stale where there was " 'good reason' " to believe computerized images of child pornography would still be present 10 months later].)

Applying these precepts, we see no error in the trial court's determination that the reports based on information derived from third parties were not conclusory, were not stale, and were reliable and corroborative of the others. The inferences from the tips obtained from the Greenbergs and Hietpas were reinforced by the opinion of the affiant, a 20-year veteran who relied on his training, experience, and conversations with other law enforcement officers and with the computer forensics expert at the sheriff's office.

*United States v. Miknevich* (3d Cir. 2011) 638 F.3d 178 does not point to a different conclusion; on the contrary, it supports the magistrate's assessment of probable cause in this case. Although the affidavit in *Miknevich* did not indicate that the

investigating officers had actually viewed the files containing suspected child pornography, the Third Circuit Court of Appeals determined that the title of the challenged computer file contained sufficient information to make the required determination: it contained "highly graphic references" to sexual acts involving children; thus, the inference of sexual exploitation of children as young as six and seven was "a strong one and established probable cause." (*Id*. at p. 184.) As the court pointed out, while a file name is not necessarily a "definitive indication" of its content, " '[c]ertainty has no part in a probable cause analysis.' " (*Id*. at p. 185.) The court thus affirmed that a "file's name may certainly be explicit and detailed enough . . . to permit a reasonable inference of what the file is likely to depict." (*Ibid*.)

We thus agree with the trial court that taken together, the information provided was sufficient to give a reasonable person grounds to suspect that child pornography could be found on Klugman's computers. Klugman has not established that Robison's affidavit failed to provide " 'sufficient competent evidence' " to support the magistrate's finding of probable cause. (*Westerfield*, *supra*, 6 Cal.5th at p. 660.)

### b. *Constitutional and Statutory Particularity Requirements*

In his petition Klugman renews his challenge to the scope of the permitted search on both constitutional and statutory grounds. He asserts defects under the federal and state constitutions attributable to the asserted lack of particularity in the description of the equipment to be searched and the property to be seized.[7] He takes issue with the expansive phrase "including, but not limited to" in describing the items to be seized, comparing it to warrants impermissibly allowing seizure of "[a]ny and all data in the

---

[7] As noted earlier, the Fourth Amendment prohibits the issuance of a search warrant except "upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized*." (Italics added.) Article I, section 13, of the California Constitution similarly states that "a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

computers . . . including, but not limited to . . .” the software and records specified by the government.  (*United States v. Fleet Management Ltd*. (E.D. Pa. 2007) 521 F. Supp.2d 436, 439.)

"In the context of the Fourth Amendment, ' "[p]articularity is the requirement that the warrant must clearly state what is sought." '  [Citation.] . . . The particularity requirement of the Fourth Amendment helps to ensure that a search or seizure 'will not take on the character of the wide-ranging exploratory searches [or seizures] the Framers intended to prohibit.'  [Citation.] . . . [¶]  However, a warrant 'need only be reasonably specific' [citation], and 'the specificity required "varies depending on the circumstances of the case and the type of items involved." '  [Citations.]  The constitutional and statutory requirements of particularity are satisfied if the warrant 'imposes a meaningful restriction upon the objects to be seized.'  [Citation.]  The requirement of reasonable particularity 'is a flexible concept, reflecting the degree of detail available from the facts known to the affiant and presented to the issuing magistrate.'  [Citations.] . . . [¶]  In the context of a search of a place, the Fourth Amendment requirement of particularity and our state statutory particularity requirement in section 1525 are met 'if the description is such that the officer . . . can with reasonable effort ascertain and identify the place intended.' "  (*People v. Robinson* (2010) 47 Cal.4th 1104, 1132-1133, fn. omitted.)

"Whether a warrant's description of property to be seized is sufficiently particular is a question of law subject to independent review by an appellate court.  [Citation.]  In considering whether a warrant is sufficiently particular, courts consider the purpose of the warrant, the nature of the items sought, and 'the total circumstances surrounding the case.'  [Citation.]  A warrant that permits a search broad in scope may be appropriate under some circumstances, and the warrant's language must be read in context and with common sense."  (*People v. Eubanks* (2011) 53 Cal.4th 110, 133-134.)

Based on the testimony received at the hearing, the court found it "clear . . . that the detectives were selective in their previewing of material to search for items that were

particularly described in the warrant and not spending time and energy on irrelevant material.  If anything, the methodology used in this search touched irrelevant items [as] lightly as possible so as to efficiently use time and resources to gather only relevant items."  The court added that its findings applied equally to the particularity requirement under the ECPA.

We agree with the trial court that the constitutional particularity requirements were met here.  As the court noted, relying on *Hill*, *supra*, 459 F.3d at p. 973, "it is impossible to tell what a computer storage medium contains just by looking at it."  The warrant did not authorize seizure of any material for exploratory purposes, but conveyed the limited objective, which was to recover material "depicting or relating to child pornography," identify "victims of sexual abuse or exploitation," and access files and other material "referring to or relating to planned or actual sexual encounters with minors."  While we agree that the search permitted a wide range of locations of the information sought, viewed in light of the purpose and circumstances of the intended search, the warrant was reasonably specific in identifying the nature of the materials to be seized.  (Cf. *United States v. Campos* (10th Cir. 2000) 221 F.3d 1143, 1147 [upholding warrant that was "directed at items relating to child pornography," not an unfocused inspection of computer equipment]; *United States v. Hay* (9th Cir. 2000) 231 F.3d 630, 637 [seizure of entire computer system necessary where government had no way of knowing where targeted child pornography images were stored].)

Klugman raises a similar challenge based on section 1546.1, subdivision (d), of the ECPA.  At the time the warrant was obtained, that subdivision required that the warrant "describe with particularity the information to be seized by specifying the time periods covered and, as appropriate and reasonable, the target individuals or accounts, the applications or services covered, and the types of information sought."  (§ 1546.1,

16

subd. (d)(1), Stats. 2015, ch. 651, § 1.)[8]  The warrant also had to protect information unrelated to the objective of the warrant by ensuring that such information be sealed and remain unavailable without a court order.  (§ 1546.1, subd. (d)(2).)

We reach the same conclusion regarding the adequacy of the warrant requirements under the ECPA, with one exception.  The Act requires the warrant to specify "the time periods covered."  (§ 1546.1, subd. (d)(1).)  The trial court applied the exception added to the statute in the September 2016 for circumstances indicating that "it is not appropriate to specify time periods" (*ibid.*), stating that it did "not find that time periods would be reasonable to be specified in this instance."

The 2016 amendment makes it apparent that "as appropriate and reasonable" was intended to qualify the requirement that the "time periods covered" be specified.  But even if the new language is not applied to this case, the provision nonetheless implicitly accommodates the finding that specification of the time periods covered is not "appropriate and reasonable."  (§ 1546.1, subd. (d)(1).)  Here, given the nature of the evidence sought, those time periods were not important, for the same reason the evidence was not stale; possessing child pornography is still a crime whether it was acquired a month or years earlier, and "customers of child pornography sites do not quickly dispose of their cache." (*Morales-Aldahondo*, *supra*, 524 F.3d at p. 119.)  Klugman is accused of possessing material depicting minors in real or simulated sexual activity; the proscription against current possession of the material does not require knowing when he acquired those images.  Thus, even if we determined that the amendment did not merely clarify the Legislature's original intent in the particularity requirement, we would not find a basis for

---

[8] Section 1546.1, subd. (d)(1), was amended in 2016, the same year the statute took effect, to make minor text changes *and* add, "provided, however, that in the case of a warrant described in paragraph (1) of subdivision (c), the court may determine that it is not appropriate to specify time periods because of the specific circumstances of the investigation, including, but not limited to, the nature of the device to be searched." (Stats. 2016, ch. 541, § 3.5.)

overturning the trial court's ruling. Klugman has not demonstrated that the technical failure to specify the time periods of the search required suppression of the evidence seized.

The requirement that material be sealed if it is unrelated to the objectives of the warrant is another protective measure contained in section 1546.1, subdivision (d)(2). It is undisputed that the warrant for Klugman's equipment did not dictate that medical information about Klugman's dental patients be sealed in compliance with HIPAA, the federal "Health Insurance Portability and Accountability Act of 1996" (Pub.L. No. 104-191, 110 Stat. 1936). The trial court noted that the investigating officers previewed material on the computers at the scene, "thus addressing the issue noted in the statute." The court further found no indication that the officers did not subsequently follow the procedure for sealing this information. We must accept this factual finding absent a contrary showing.

We further see no showing by Klugman that the magistrate's omission to impose the sealing requirement compelled or justified suppression of the material that was the *actual* target of the search.[9] The warrant satisfied the particularity requirement of the statute by identifying with reasonable specificity the nature of the items to be seized. The sealing requirement protected the privacy rights of Klugman's patients, not Klugman, to preclude disclosure of their medical history and treatment. Klugman has not shown that the absence of this cautionary step for third parties' benefit compelled the quashing of the warrant or the suppression of the evidence found in the ensuing search. (Cf. *People v. Jackson* (2005) 129 Cal.App.4th 129, 151 [recognizing approval of harmless error analysis for minor violations of procedures under wiretap statutes]; accord, *People v. Roberts* (2010) 184 Cal.App.4th 1149, 1185-1186, 1189 [suppression of wiretap evidence

---

[9] The appellate record contains 11 sealed pages containing file names obtained from Klugman's hard drives. The trial court sealed this material at the November 29, 2017 motion hearing.

18

not required where violations did not contravene a central purpose of the act and judicial errors were harmless]; see also *People v. Hoag* (2000) 83 Cal.App.4th 1198, 1208 [where officers substantially complied with knock-notice requirements, their technical violation was only part of the reasonableness inquiry, not per se unreasonable, and under the totality of the circumstances did not require suppression of evidence found inside].) Neither HIPAA nor the language of the ECPA instructs otherwise.[10]

We conclude, therefore, that Klugman has failed to meet his burden to show prejudice from his counsel's unexcused delay in filing the pretrial motion. The trial court did not err in determining that neither the Fourth Amendment nor the ECPA required suppression of the child pornography evidence found on Klugman's electronic devices.

*Disposition*

The petition for writ of mandate, prohibition, or other relief is denied. Upon finality of this decision the temporary stay is vacated.

---

[10] In the trial court the People called attention to a prior version of the bill that eventually became the ECPA. That earlier version contained language providing that electronic information obtained in violation of the ECPA would be inadmissible in a legal proceeding. The final bill as enacted replaced the exclusionary language with the provision enabling the defendant to *move* to suppress electronic information that violates the Fourth Amendment or the ECPA restrictions. (§ 1546.4.)

19

_____

ELIA, ACTING P. J.

WE CONCUR:


_____

BAMATTRE-MANOUKIAN, J.



_____

MIHARA, J.




*Klugman v. Superior Court*
H045415

Filed 9/16/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GARY PHILLIPS KLUGMAN,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>MONTEREY COUNTY,<br><br>     Respondent;<br><br>THE PEOPLE,<br><br>     Real Party in Interest. | H045415<br>(Monterey County<br>Super. Ct. No. SS160207A)<br><br><br><br>**ORDER GRANTING REQUEST**<br>**FOR PUBLICATION** |

THE COURT:

Pursuant to California Rules of Court, rule 8.1105(b), the request for publication is hereby granted. It is ordered that the opinion in this matter, filed on August 30, 2019, shall be certified for publication.

_____

ELIA, ACTING P. J.


_____

BAMATTRE-MANOUKIAN, J.


_____

MIHARA, J.

| Trial Court: | Monterey County Superior Court<br>Superior Court No. SS160207A |
|---|---|
| Trial Judge: | Hon. Julie R. Culver |
| Counsel for Petitioner:<br>GARY PHILLIPS KLUGMAN | Law Offices of Lawrence & Peck<br>Michael Lawrence<br>Juliet Peck<br><br>Law Offices of Joel Franklin<br>Joel Franklin |
| Counsel for Amicus Curiae on behalf of Petitioner:<br>ELECTRONIC FRONTIER FOUNDATION | Tze Lee Tien<br>Stephanie Jane Lacambra |
| Counsel for Amicus Curiae on behalf of Petitioner:<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA | Nicole Alexandra Ozer<br>Jacob Adam Snow<br>Shilpi Agarwal |
| Counsel for Respondent:<br>SUPERIOR COURT OF MONTEREY COUNTY | No appearance for Respondent |
| Counsel for Real Party in Interest:<br>THE PEOPLE | Xavier Becerra<br>Attorney General<br><br>Gerald A. Engler<br>Chief Assistant Attorney General<br><br>Jeffrey M. Laurence<br>Senior Assistant Attorney General<br><br>Donna M. Provenzano<br>Supervising Deputy Attorney General<br><br>Amit A. Kurlekar,<br>Deputy Attorney General |

*Klugman v. Superior Court*
H045415